**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RICHARD A. MAJOR,                                    Case No. 1:10-cv-530

       Plaintiff,                                    Weber, J.
                                                     Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.


## REPORT AND RECOMMENDATION

Plaintiff Richard A. Major filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error. As explained below, I conclude that the finding of non-disability should be REVERSED, because it is based upon clear legal error and is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

On March 4, 2007, Plaintiff filed an application for Supplemental Security Income Benefits (SSI), alleging a disability onset date of January 1, 2003, due to a variety of physical and mental impairments, including a mood disorder, an anxiety disorder, depression, borderline intellectual functioning, type II diabetes, paralysis of the right side of the diaphragm, bilateral tinea pedis, bilateral onychomycosis of the nails, bilateral peripheral vascular disease, bilateral hammertoe, and bilateral tarsal tunnel syndrome.[1] (*See* Doc. 4-2 at 12-13, Administrative Record, Hearing Decision).

---

[1]This appeal asserts error relating only to Plaintiff's mental impairments.

After Plaintiff's claims were denied initially and upon reconsideration (Doc. 4-2 at 2-5), he requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  On September 29, 2009, ALJ Donald A. Becher held a hearing at which Plaintiff was represented by counsel.  (*Id.* at 24-57).  At the hearing, ALJ Becher heard testimony from Plaintiff and from Janet Chapman, a vocational expert.

Plaintiff's educational background is limited; he attended school only through the ninth grade, and testified that he was enrolled in some form of special education classes until then. (*Id.* at 30).  He can read a short note, but cannot read or complete "paperwork" such as a job application. (*Id*. at 30-31).  Plaintiff's employment history is also limited, with numerous short periods of employment.  Plaintiff's most sustained period of employment was servicing oil wells.  (*Id*. at 32-36).

On October 23, 2009, the ALJ entered his decision denying Plaintiff's SSI application (*Id.* at 7-23).  The Appeals Council denied Plaintiff's request for further review.  Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since March 4, 2007, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: drug and alcohol abuse; anxiety disorder; depression; learning disorder, not otherwise specified; pulmonary embolism; right side diaphragm paralysis resulting in mild pulmonary defect; diabetes resulting in bilateral neuropathy; bilateral tinea pedis; onychomycosis; peripheral vascular disease; hammertoe and tarsal tunnel syndrome (20 CFR 416.920(c)).

...........

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.....

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can stand no more than 20 minutes at a time and can walk no more than one block at a time. He should avoid concentrated exposure to extreme heat or cold, humidity, fumes, odors, dusts, gases and poor ventilation.  The claimant's work must be limited to one or two-step tasks in a low stress environment with only occasional interaction with co-workers and supervisors.  The claimant is limited to only the most basic (third to fourth grade) reading skills.

(*Id*. at 12-15).  In addition, the ALJ determined:

5.      The claimant is unable to perform any past relevant work (20 CFR 416.965).

         ............

6.      The claimant was born on September 18, 1960 and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).[2]

7.      The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a))
         ...........................

10.     The claimant has not been under a disability, as defined in the Social Security Act, since March 4, 2007, the date the application was filed (20 CFR 416.920(g)).

---

[2]The relevant time for determining a claimant's age is the date of the ALJ's decision.  *See Varley v. Secretary of Health & Human Serv.*, 820 F.2d 777, 780 (6th Cir. 1987).

(*Id*. 21-22). Thus, the ALJ concluded that Plaintiff was not entitled to SSI benefits.

Plaintiff appeals to this Court challenging only the ALJ's determination of his mental impairments. Therefore, this Report and Recommendation focuses exclusively upon Plaintiff's mental impairments and related medical records.

In 2003, Plaintiff's medical records include some reference to Plaintiff's complaints of anxiety. Plaintiff reported in July that he had been "much calmer" when using illicit drugs a year earlier, and was prescribed Wellbutrin in addition to Paxil. (Doc. 4-7 at 44-45). In September, Plaintiff complained of increased anxiety, noting that he had run out of medication three weeks previously. (*Id.* at 42).

There are no relevant medical records following September 2003, or through the entire calendar years of 2004, 2005 and 2006. In February of 2007, after reporting a history of methamphetamine addiction and cocaine use, as well as contemporaneous marijuana and alcohol use (Doc. 4-7 at 66), Plaintiff complained of "very bad nerves." He was prescribed Xanax and advised to undergo a psychiatric evaluation (*Id.* at 65).

The day after being prescribed Xanax, Plaintiff was admitted to the hospital for physical complaints (*Id.* at 69-71). Records reflect symptoms of alcohol abuse, "tremors with increased anxiety," and that after treatment including Ativan and Valium, his symptoms "started to subside." (*Id.* at 69). At the time, Plaintiff admitted to past and present cocaine use (*Id.* at 74-76). Even accounting for any symptoms attributable to drug and alcohol withdrawal, Plaintiff was diagnosed upon discharge with a "fairly moderate to severe" anxiety disorder and prescribed Klonopin and Ativan. (*Id.* at 71).

Plaintiff next complained of anxiety and other conditions when he reported to the emergency room in April 2007. (*Id*. at 91).

Consulting psychologist Dr. Heideman examined Plaintiff in June of 2007 (Doc. 4-7 at 95-103), noting Plaintiff's reports of high anxiety, history of "learning problems," and an inability to maintain attention (*Id.* at 98).  Plaintiff also reported a history of substance abuse (*Id.* at 98-101).  Dr. Heideman described "serious symptoms" and opined that Plaintiff had marked limitations in his abilities to relate to others, maintain attention, concentration, persistence and pace, and withstand job stress.  Dr. Heideman described Plaintiff as someone exhibiting "the pressured speech of someone in a manic episode," who "can't sit still," "breathes shallowly like someone having an asthma attack," and who has "poor insight" and a "poor memory for dates, durations, and ages." (*Id*. at 100-101).  After describing Plaintiff's severe limitations, Dr. Heideman added that Plaintiff's ability to work would be hampered by the fact that he is "not reliable or retainable."  (*Id*. at 102-103).

 A non-examining consulting psychologist, Dr. Meyer, disagreed with many of Dr. Heideman's conclusions following a record review just a month later, in July 2007. (Doc. 4-7 at 123-125).  A second non-examining consulting psychologist, Dr. Finnerty, affirmed Dr. Meyer's opinions without discussion in November 2007. (*Id.* at 169).

Plaintiff sought treatment in September 2007 from the Central Clinic for mood problems, anxiety and a history of amphetamine use.  A social worker, Mr. Kelsch, assessed Plaintiff with a mood disorder, an anxiety disorder, amphetamine dependency in remission, and borderline intellectual functioning.  (Doc. 4-7 at 135-138).  A similar assessment was made in October 2007 (*Id*. at 144-145).

Records reflect excessive alcohol consumption in December 2007 and in February 2008 (Doc. 4-8 at 73-74).  In August 2008 Plaintiff was admitted to the hospital

with pneumonia (Doc. 4-7 at 206-207).   Plaintiff's records reflect extreme anxiety associated with alcohol abuse and possible withdrawal, and provided related treatment. (*Id.* at 207-208, 215).   Plaintiff's drug screen test was positive for cocaine, and his diagnoses on discharge included severe anxiety/depression with a history of alcohol abuse and possible alcohol withdrawal. (*Id*. at 207).   Plaintiff reported drinking multiple times daily during September and October 2008, but reported in December 2008 that he had quit drinking.

Plaintiff began treating with psychiatrist Dr. Harrison in January 2009.   Over the course of monthly visits through June 2009, Dr. Harrison documented serious symptoms evidencing anxiety and depression, and prescribed eight medications.   Using an outdated "Psychiatric Review Technique" form, in September of 2009 Dr. Harrison opined that Plaintiff suffered from an affective disorder, with clinical signs of an organic mental disorder, including memory impairment, disturbance in mood, emotional lability and impairment to impulse control.   (Doc. 4-8 at 109-110).   He determined that Plaintiff was significantly limited in his mental capacities and activities of daily living, (*see id.* at 120), and that Plaintiff had experienced at least four episodes of "deterioration" of extended duration, such that he met the "C" criteria both for Listing 12.04 and for Listing 12.06.   (*Id.* at 122).

On appeal to this court, Plaintiff asserts that the ALJ committed three errors: 1) he failed to give controlling weight to the opinion of Plaintiff's treating psychiatrist; 2) he improperly considered Plaintiff's drug and alcohol abuse in a manner contrary to controlling regulations; and 3) he failed to support his non-disability finding with substantial evidence.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for SSI benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning,[3] a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference

---

[3] The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

In this case, Plaintiff alleges that the three previously referenced errors at the fifth step of the sequential analysis require remand back to the Commissioner.  To reiterate, Plaintiff argues that the ALJ improperly rejected the opinions of his treating physician,

incorrectly evaluated Plaintiff's drug and alcohol abuse, and improperly relied upon consulting physicians to support his non-disability finding.   Upon review, it is clear that the ALJ erred as a matter of law in the manner in which he evaluate Plaintiff's drug and alcohol abuse.  That legal error in turn caused additional errors in the rejection of the opinions of Plaintiff's treating physicians and in the review of evidence used to support the finding of non-disability.  The series of errors requires this Court to remand for further proceedings.

### B.  Plaintiff's Drug and Alcohol Abuse

The ALJ's written opinion focuses heavily upon Plaintiff's history of drug and alcohol abuse.  That history was used by the ALJ to discount the opinions of Plaintiff's treating physicians, to minimize Plaintiff's mental health symptoms, and to make adverse credibility determinations against the Plaintiff.   However, review of relevant case law and the Commissioner's own regulations confirm that the ALJ committed legal error in the manner in which he analyzed Plaintiff's substance abuse history.

The ALJ listed Plaintiff's drug and alcohol abuse as a "severe impairment," (*see* Doc. 4-2 at 11), referring to documentation of Plaintiff's abuse in the medical records:

> Although the claimant's counselor noted that [his] amphetamine dependence was "in remission," the record shows that the claimant has a history of drug and alcohol abuse and that he continues to use such substances.  In February 2007, Dr. Swarup diagnosed alcohol abuse...and in June 2007, consultative psychologist John Heideman, Psy.D., diagnosed polysubstance abuse, in sustained partial remission, and nicotine dependence. ...The record also shows cocaine use and regular alcohol and tobacco use since July 2003.

(*Id.*).  The ALJ concluded that Plaintiff's inability to work resulted from his substance abuse issues and not for any valid medical reason:

> It appears that the claimant's relatively sporadic work history is due to his drug use, and that the claimant has made inconsistent statements

regarding his unemployment.  The claimant told Dr. Heideman in June 2007 that he has worked a variety of jobs, but that they "didn't last long."  Dr. Heideman noted that the claimant was not able to explain 'why he would keep moving on.'  (9F/8).  However, in October 2007, the claimant told Mr. Kelsch at the Central Clinic that he "would use drugs" and had "problems keeping employment" (Exhibit 16F/5).  Thus, it is reasonable to infer that the claimant's lack of employment is the result of a lifestyle choice and not necessarily due to any disabling impairments.

(Doc. 4-2 at 18-19).

In drawing such inferences, the ALJ failed to properly interpret and apply the Commissioner's own regulations regarding the effect of substance abuse.  Those regulations are intended to implement a 1996 amendment to the Social Security Act, which states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addition would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §423(d)(2)(C).

The regulations that implement this legal standard carefully set forth the sequential evaluation process to be followed whenever the issue of substance abuse presents itself.  Under the relevant regulations, an ALJ must *first* determine whether a claimant suffers from a disability under 20 C.F.R. §416.920, before proceeding - if necessary - to a determination of whether the substance abuse is a "contributing factor to the determination of a disability."  20 C.F.R. §416.935.  In this instance, the ALJ improperly reversed and/or conflated the sequential analysis by considering Plaintiff's substance abuse issues prior to making a determination of disability.  In fact, the ALJ did not even cite to the controlling regulation, 20 C.F.R. §416.935.

As another district court in the Sixth Circuit explained in remanding based upon a similar error:

> To find that drug addition is a contributing factor material to the determination of disability without first finding the claimant disabled, as the ALJ did here, is to put the cart before the horse....The implementing regulations make clear that a finding of disability is a condition precedent to an application of §423(d)(2)(C).

*Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (M.D. Tenn. 2004)(reversing where the ALJ improperly considered claimant's cocaine addiction as detracting from the credibility of her complaints of seizure activity and other symptoms). Noting the absence of published Sixth Circuit case law on this issue, the *Williams* court was persuaded by similar interpretations of the controlling regulations by the Tenth and Eighth Circuit Courts of Appeal. *See, e.g., Brueggemann v. Barnhart*, 348 F.3d 689, 693-95 (8th Cir. 2003); *Drapeau v. Massanari*. 255 F.3d 1211, 1214-15 (10th Cir. 2001).

The facts and analysis of *Brueggemann* are especially persuasive here. In that case, the ALJ "purported to follow the standard five-step procedure to determine whether Brueggemann satisfied the Social Security disability standards," but took into consideration the plaintiff's alcohol and drug abuse during the first sequential process. For example, as the ALJ did in this case, in *Brueggemann* the ALJ gave "little weight" to the opinion of the treating psychiatrist that the claimant had "poor or no ability to deal with stress," based upon the ALJ's opinion that Brueggemann's substance abuse was at the root of his problems. As here, the ALJ in *Brueggemann* failed to cite to the relevant regulation, a failure that the Eighth Circuit concluded was "not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there. The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard." *Id.*, 348 F.3d at 694.

The Eighth Circuit held that the ALJ committed legal error by failing to administer the initial five-step sequential process for determining disability, as required by 20

C.F.R. §404.1520, without any regard for the impact of the plaintiff's drug or alcohol abuse:

> The ALJ must base this [initial] disability determination on substantial evidence of Brueggemann's medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability. See 20 C.F.R. § 404.1527.

*Id.* In other words, *Brueggeman* and other courts reviewing this issue have held that the regulations require the Commissioner to first determine if the "gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability" before considering the net total of "which limitations would remain when the effects of the substance use disorders are absent." *Id.* It constitutes legal error to "discount" impairments based upon substance abuse when calculating the "gross" total of a claimant's limitations.

The Commissioner acknowledges that the ALJ did not cite to 20 C.F.R. §416.935[4] in this case, but argues - without distinguishing *Brueggeman* or contrary case law - that the regulations do not "place any limits on how an ALJ is to consider the fact of drug abuse or alcoholism when evaluating the limitations of a claimant who is not disabled." In a footnote that also fails to cite to relevant case law, the Commissioner suggests that a requirement that an ALJ must first find a claimant to be disabled before considering drug or alcohol abuse would improperly skew the disability evaluation

---

[4] 20 C.F.R. §416.935 is the regulation that pertains to the evaluation of substance abuse issues for SSI applications. References to 20 C.F.R. §404.1535 pertain to the identical regulation concerning DIB applications.

process, because it "would mean that only drug and alcohol abuse that [rises] to the level of being disabling could ever be a relevant fact." (Doc. 8 at 10, n.8).

The Commissioner is wrong. When drug and alcohol abuse play a role in symptoms, the *symptoms* or limitations, but not the cause, can and should be considered in making a determination of disability under 20 U.S.C. §416.920. The substance abuse should not be ignored - regardless of whether the substance abuse is in and of itself to be disabling. If the gross total of limitations, including those caused by substance abuse, results in a finding of non-disability, the analysis stops and the ALJ need not factor out any limitations caused by the substance abuse. On the other hand, if the gross total leads to a finding of disability, then and only then should the ALJ turn to 20 U.S.C. §916.935 to deduct those limitations attributable to substance abuse. *Accord Trent v. Astrue*, 2011 WL 841538 *3 (N.D. Ohio March 8, 2011)("if the ALJ...determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis ...to determine if the claimant would still be disabled without the substance abuse.").

The policy reasons for this regulatory scheme are readily apparent from a review of this case. In the absence of clear guidelines on when and how to analyze a claimant's substance abuse, an ALJ with an inherent view of "addiction as illness" may reach a radically different conclusion than an ALJ who views substance abuse issues as a "lifestyle choice." While the Commissioner's regulations may not be foolproof, the uniform approach that they require can reduce such judicial bias.

Here as in *Brueggeman* and *Williams*, the ALJ erred by prematurely discounting Plaintiff's symptoms and improperly using Plaintiff's substance abuse as a basis both for minimizing Plaintiff's symptoms and for rejecting Plaintiff's treating physician's opinions.

13

The ALJ determined that Plaintiff had lied to his treating physicians about his drug and alcohol abuse, and that Plaintiff's lack of truthfulness itself was cause for rejecting the opinions of those treating physicians.  However, that is not a proper basis for rejecting a treating physician's opinion.  *See Brueggemann*, 348 F.3d at 694.

While not alone a basis for remand, it is worth noting that the ALJ also improperly appears to have interjected his own medical opinions concerning the effect of Plaintiff's substance abuse.  In addition to referring to Plaintiff's sporadic work history as a "lifestyle choice," the ALJ explained in formulating Plaintiff's Residual Functional Capacity (RFC) that he "arrived at the very limited mental restrictions...to account for the toll that alcohol and/or drug use has taken on what was apparently a very limited intellect to begin with." (Doc. 4-2 at 20).[5]  However, there does not appear to be any medical evidence of record concerning the effect of Plaintiff's long-term alcohol and/or drug abuse.  It is well established that "an ALJ should not substitute his own observations for professional medical opinion of record."  *Harris v. Heckler*, 756 F.2d 431, 439 (6th Cir. 1985).  Where insufficient evidence exists to support the opinions of a treating physician, an ALJ may be required to further investigate pursuant to SSR 96-5p.  *See also Brueggeman* at 695 (though it may be difficult to determine which limitations would remain when the effects of substance abuse are taken away, "the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.").

---

[5]Oddly, although the ALJ notes evidence of Plaintiff's "limited intellect" including Plaintiff's own testimony that he was held back in school and enrolled in special education classes until he dropped out after 9th grade, the ALJ also found that "the record lacks evidence that any subaverage intellectual functioning manifested during the claimant's developmental period." (Doc. 4-2 at 14).

While the ALJ erred by prematurely discounting Plaintiff's symptoms and rejecting the opinions of his treating physicians based upon his drug and alcohol use, the ALJ's evaluation of Plaintiff's credibility presents a closer issue because of the deference due to an ALJ's credibility assessment. However, despite being entitled to great deference, an ALJ's assessment of credibility still must be supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In finding Plaintiff not to be credible, the ALJ relied heavily upon various "inconsistent statements" made by Plaintiff regarding his drug and alcohol use over time. (Doc. 4-2 at 19). Plaintiff offers a number of reasons to excuse any discrepencies, ranging from Plaintiff's "diagnosed difficulties with memory," to "the possibility that an individual's use...can vary over time." (Doc. 6 at 9). Indeed, the record supports Plaintiff's contention that he has diagnosed memory issues and is a poor historian.

The ALJ also discredited Plaintiff based upon his noncompliance with treatment recommendations, pointing out notes from an August 31, 2008 hospitalization that indicated that the claimant left the hospital against medical advice. However, the same notes reflected that the claimant was "extremely anxious" throughout admission and that, despite counseling, he insisted that he would "be able to adequately care for himself at home," suggesting that anxiety played a role in his non-compliance (Doc. 4-2 at 18). *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)("Appellant may have failed to seek psychiatric treatment for his ... condition, but it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

For similar reasons, Plaintiff's failure to consistently seek mental health treatment over time must be carefully evaluated in the context of the record as a whole, rather

15

than serving as any type of "automatic" basis for discounting his credibility concerning his mental health issues.  "ALJ's must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state.  For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."  *White v. Commissioner of Social Sec.,* 572 F.3d 272, 283 (6th Cir. 2009).  In short, while the ALJ's assessment of Plaintiff's credibility is not wholly unsupported, the evidence cited by the ALJ was decidedly slim and suggests that he may have been unduly influenced by his error in applying the sequential analysis.  *Accord Hudson v. Astrue*, 2010 WL 3940985 (M.D. Tenn. Oct. 6, 2010)(remand required where ALJ failed to comply with regulatory scheme for evaluation of alcohol abuse).

### C.  Rejection of a Treating Physician's Opinion

The Social Security regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).  In determining the weight to give to any medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion.  *Id.*  In another listed error, Plaintiff argues that the ALJ failed to give controlling weight to the opinion of his treating psychiatrist, Dr. Wayne Harrison.

Dr. Harrison treated Plaintiff once per month on six occasions between January and June 2009, and completed a functional assessment form in September of 2009 in which he indicated that Plaintiff's abilities were severely limited. The ALJ completely rejected that assessment in determining Plaintiff's RFC. In addition, although Dr. Harrison stated that Plaintiff met a Listed Impairment because he had experienced more than four episodes of deterioration or decompensation[6] (Doc. 4-8 at 121), the ALJ found without discussion that Plaintiff's records documented just one episode of extended duration. Whereas Dr. Harrison estimated that Plaintiff would miss five days per month (Doc. 4-8 at 108), the ALJ did not find any grounds for absence from work.

Ultimately the determination of a claimant's residual functional capacity is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). There is no doubt that where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions. *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for his rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

---

[6] Although Dr. Harrison used an older form that refers to "deterioration" rather than "decompensation," a review of the case law suggests that the terms are often used interchangeably.

As a basis for discounting Dr. Harrison's opinions, the ALJ cited: 1) Dr. Harrison's failure to account for Plaintiff's substance abuse; 2) the fact that many of the symptoms noted by Dr. Harrison *could* be explained by that abuse;[7] 3) the lack of objective support for Dr. Harrison's opinions and 4) the inconsistency of Dr. Harrison's opinions with other evidence in the record.  The first, second, and fourth reasons cited by the ALJ reflect his improper application of the sequential analysis required for cases involving drug or alcohol abuse, and therefore require remand.

First, compounding his initial error, the ALJ improperly rejected Dr. Harrison's opinions in large part based upon Plaintiff's substance abuse.  For example, the ALJ noted that "polysubstance abuse is not indicated in [Dr. Harrison's mental capacities assessment] or Dr. Harrison's progress notes..., and the claimant specifically denied substance abuse in June and July 2009." (Doc. 4-2 at 14).  The ALJ further noted that after a 2007 hospitalization, "the claimant displayed many of the same symptoms as noted by Drs. Heideman and Harrison, such as tremors and increased anxiety" but at that time the diagnosis for those symptoms was "alcohol withdrawal," and after treatment, Plaintiff's symptoms subsided.  (*Id.*).  Based upon evidence that the Plaintiff was still drinking as of March 31, 2009, the ALJ concluded that:

> the claimant has an ongoing issue with, at least, alcohol abuse, which he did not divulge to Dr. Heideman or Dr. Harrison.  Such omissions call into question the conclusions of these mental health sources.

(*Id.*).  The ALJ's conclusions are unsupported to the extent that he concludes, contrary to Dr. Harrison and other medical records, that Plaintiff's symptoms of anxiety could be *wholly* caused by alcohol withdrawal. *See Trent v. Astrue*, 2011 WL 841538 at *5

---

[7]Although the ALJ posited that Plaintiff's symptoms "could" be explained by his substance abuse, no medical authority offered that explanation.

(reversing ALJ for taking "administrative notice" that alcohol has been shown "to exacerbate symptoms of mental disorders").

In addition, there is some indication that Drs. Heideman and Harrison either suspected or were aware of Plaintiff's substance abuse.  For example, Dr. Harrison expressed his disbelief in Plaintiff's reported denial by writing "denied??" on the evaluation form next to the evaluation of "substance abuse."  (Doc. 4-8 at 77).  Dr. Heideman also diagnosed Plaintiff with polysubstance dependence in sustained partial remission.  (Doc. 4-7 at 101).

The ALJ also found Dr. Harrison's opinions to be inconsistent with other record evidence - ordinarily, a legitimate basis for awarding less weight to a medical opinion. However, in this case Plaintiff argues that Dr. Harrison's opinions were consistent with nearly all of the other record evidence, including that offered by Dr. Heideman, Social Worker Kelsch, the Commissioner's own field agents, and the vocational expert.  *See generally, e.g.,* Heideman records noting that Plaintiff was not "reliable or retainable" due to his agitated depression (Doc. 4-7 at 102-103); Kelsch records noting Plaintiff's symptoms of anxiety and depression, and that his thought processes were tangential and distractible (Doc. 4-7 at 144); field agent J. Howard's notation of Plaintiff's nervousness and difficulty concentrating (Doc. 4-6 at 33); field agent B. Wauligman's comments that Plaintiff appeared "hyperactive" with "rambling answers and fidgeting throughout interview" (Doc. 4-6 at 39); and the notes of an unnamed field agent that Plaintiff exhibited rapid speech and scattered "panicky" thoughts (Doc. 4-6 at 56).  Even the vocational expert at the hearing testified that Plaintiff's fidgeting and inability to directly answer questions could impair his ability to perform in the workplace, and that any absences in excess of one day per month would preclude employment.  (Doc. 4-2

at 29-31).   Pointing out the consistency of evidence derived from face-to-face interviewers, Plaintiff argues that the ALJ erred by rejecting Dr. Harrison's assessment that Plaintiff is "an individual disabled by severe anxiety, depression, and affective disorders."  (Doc. 6 at 7).

Based upon my review of the record as a whole, I conclude that the ALJ's overreliance on Plaintiff's substance abuse during the initial sequential analysis under 20 C.F.R. §416.920 impacted his analysis of otherwise legitimate factors used to discount Dr. Harrison's opinions, and therefore cannot be viewed as harmless error.

This is not to say that the Commissioner is required to accept all of Dr. Harrison's opinions on remand.   A portion of the ALJ's analysis may well provide grounds for discounting the weight given to those opinions.  For example, the ALJ noted:

> Although Wayne Harrison, M.D., the claimant's psychiatrist...arrived at a GAF score of 35 on June 5, 2009..., this is unsupported by the treatment records.   Dr. Harrison noted that the claimant's nervousness and depression had decreased and that the claimant was neither suicidal nor homicidal....Further, Dr. Harrison's progress notes contain only minimal observations of the claimant's behavior and lack signs or findings upon examination.

(Id. at 16).  In addition, the ALJ was critical of the fact that Plaintiff was seen by Dr. Harrison for only six meetings.

The lack of objective evidence or clinical notes, inconsistencies with other record evidence, and/or an abbreviated treatment relationship are legitimate factors to be considered in weighing a treating physician's opinion. However, given the ALJ's multiple references to Plaintiff's substance abuse and clear legal error in applying the requisite sequential analysis, the ALJ's stated reasons for rejecting Dr. Harrison's opinions are insufficient.   On remand, the Court assumes that the Commissioner will again review treatment records that show that Dr. Harrison prescribed Plaintiff eight different

medications, Dr. Harrison's clinical observations of Plaintiff as depressed, agitated, shaky and moving constantly, (Doc. 4-8 at 80), and both consistencies and inconsistencies with other medical records.   On remand, the Commissioner should consider Plaintiff's substance abuse only if and when a determination of disability has been made and 20 CFR §416.935 comes into play.  In sum, while a more complete analysis on remand may find support for the ALJ's ultimate conclusions, the present record does not.

### D.  Weight Given to Consulting Physicians

As his last assignment of error, Plaintiff argues that the Defendant gave too much weight to the opinions of two consulting physicians, Dr. Meyer and Dr. Finney.  Neither examined the Plaintiff.  Dr. Meyer completed a medical records review and assessed Plaintiff's mental abilities on July 3, 2009, two months before Dr. Harrison completed his more dire assessment.  Dr. Meyer found Plaintiff to be only "moderately limited" in his ability to maintain concentration, and not limited at all in his ability to accept instructions and criticism from supervisors, maintain a regular work schedule, or work in connection or close proximity to others without being distracted.  (Doc. 4-7 at 122).    Dr. Finney reviewed Dr. Meyer's assessment and simply concurred with it without discussion.  (*Id.* at 169). The ALJ heavily relied upon the opinions of these consultants to determine Plaintiff's RFC.

An ALJ's decision to accord greater weight to state agency physicians over a plaintiff's treating physicians is not, by itself, reversible error, because there may well be appropriate reasons for that decision.  *Blakely v. Commissioner of Social Security*, 581 F.3d 399, 409 (6th Cir. 2009).  For example, if the consulting physician's opinion is based upon more complete information than was available to the physician's treating

source, then the ALJ may give greater weight to that opinion. *Id.* (citing Soc. Sec. Rul 96-6p, 1996 WL 374180, at *3 (July 2, 1996)).

On the record presented, however, the ALJ's adoption of an RFC based primarily upon the report of a single consulting physician is problematic. The use of Dr. Meyer's assessment over the opinions of Dr. Harrison does not satisfy the "good reasons" requirement, because - aside from improperly factoring in Plaintiff's drug and alcohol use - the ALJ did not discuss any basis for accepting their opinions over the opinions of Plaintiff's treating physicians. *See* 20 C.F.R. § 404.1527(d)(2), §1527(d)(2); *see also Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009)(reversing where only stated reason for rejection of limitation was disagreement of another physician).

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT:**

1. The decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to: (1) carefully adhere to the regulations requiring the sequential determination of disability pursuant to 20 C.F.R. §416.920 prior to analysis of substance abuse issues under 20 C.F.R. §416.935; and (2) remedy the errors identified in this Report and Recommendation concerning the weight to be given to the opinions of Plaintiff's treating physician, as well as the weight given to the opinions of non-examining consulting physicians;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

/s Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RICHARD A. MAJOR,                                              Case No. 1:10-cv-530

       Plaintiff,                                         Weber, J.
                                                              Bowman, M.J.

   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

23